Peelle, J.,
delivered the opinion of the court:
The several claims involved in this action are prosecuted by citizens .of the United States, who allege, in substance, that prior to the convention between the United States and the French Republic, concluded September 30, 1800, they had valid claims to indemnity upon the French Government arising out of the illegal capture of the vessel and cargo in ques-ion while peacefully pursuing a commercial voyage on the high seas, and that under the Fi’ench'spoliation act of January 20, 1885 (23 Stat. L., 283), they are severalty entitled to a finding and conclusion as to the loss sustained.
In April, 1797, the schooner Mary, John Myrick, master, sailed from the port of Boston on a commercial voyage bound for Demarara with a cargo of merchandise, and after having-reached that port and disposed of her cargo the master with the proceeds purchased a return cargo.
In April, 1797, while peacefully pursuing her return voyage the vessel was seized on the high seas by a French privateer, commanded by Gapt. Antoine Fuette, and a prize crew was put on board, but on the following da}*- the master succeeded in overpowering the prize crew and recaptured the vessel and took her into the island and port of Tortola, one of the Virgin islands; but for the want of ship’s papers, which had been carried off on the privateer, he was unable to put to sea or obtain a crew, and was therefore compelled to sell the vessel and cargo at a sacrifice.
On this state of facts the Government contends that whatever claim arose in claimant’s favor upon the French Govern *37 ment growing out of the capture aforesaid was released by the act of the master when he overpowered the prize crew and recaptured the vessel, and that therefore the case comes within the decision of the case of Dederer v. The Delaware Insurance Company (2 Washington’s Circuit Court Reports, 61).
In that case an action had been brought on two policies of insurance, dated in 1806, on the ship Romulus and her freight, both being valued, one of which was at and from New York to Habana and back. The vessel had sailed from New York to Habana, and on her return voyage was captured bv a British-privateer, “the captain of which assigned as the cause of the capture that war was either declared or would soon take place between Great Britain and the United States.” The crew, except the captain, the mate, and a boy, were taken off the Romulus, and the vessel, under a prize master, was ordered to Halifax.
On the voyage to Halifax the captain of the Romulus, apprehending the loss of his property on board and his imprisonment, and the loss which would result to the owners of the vessel and cargo, “ concerted with the mate and the boy a plan to retake the vessel,” but “after a warm contest it was given up. The vessel and cargo were carried in, libeled as enemy’s property, and condemned as good and lawful prize ” on the ground of the captain’s attempt to retake the vessel as aforesaid.
On that state of facts Mr. Justice Washington, in respect of the attempt to rescue the vessel, said:
“ That the attempt to rescue the vessel was unlawful and afforded a ground of condemnation is proven by the opinions of the best informed jurists, and has received the sanction of the common-law courts in a variety of instances. The doctrine was indeed admitted by the plaintiff’s counsel, though said not to apply to this case, as the captain acted under misinformation given him by the captors. This excuse, however, will not do as between the insurer and the insured, because the latter before he can recover must prove that he has strictly complied with the terms of his warranty. He can not justify a breach of it b3r alleging misconduct in third persons.”
In the present case, however, the resistance or grounds for condemnation were stronger and more aggravated than in that case, for here there was successful resistance by retaking the *38 vessel at a time when all resistance to search was unlawful. Here we have only to do with the liability of France prior to September 30, 1800, and if none existed at that time then none of the claimants had valid claims for indemnity.
A belligerent power has the undoubted right to cause neutral vessels to be searched for the purpose of preventing the conveyance of contraband goods destined to an enemy’s port, but to avoid abuse in the exercise of such right full faith and credit should be given to the ship’s papers, “unless fraud appear in them or there be good ground for suspecting it.” The right of reasonable search carries with it the corresponding duty of the master of such neutral vessel to submit thereto, and if such ship refuse to be searched, she has, by such act, given good ground for condemnation as a lawful prize. (Vattel’s Law of Nations, Book III, 339 et seq.; Barker v. Blakes, 9 East Rep., 283; 1 Chitty’s Commercial Law, 482-489; The Ship Maria, 1 C. Rob. Rep., 340; The Ship Mentor, 1 Edwards’s Rep., 208.)
It necessarily follows where a neutral vessel was seized, as in the present case, and put in charge of a prize master, to be carried to a port to undergo prize proceedings to determine the character of such vessel and her cargo, that the master had no right to take the law into his own hands and by force retake the vessel.
.His act, therefore, was unlawful, and furnished good grounds for condemnation as a lawful prize; so that whatever claim might have arisen against France growing out of the capture of the vessel was released by the unlawful act of the master by which the claimants were bound, and hence they had no valid claim against France prior to the convention between the United States and the French Republic, concluded September 30, 1800; nor were they claims released to France in part consideration of the relinquishment of certain claims of France against the United States. For the reasons given, the claimants are not entitled to any allowance in their favor.
This opinion, together with the findings in the case, will be reported to Congress for their consideration.